# EXHIBIT 8

Case 1:15-cv-00123-LAG   Document 66-10   Filed 12/15/16   Page 2 of 11

Conf. 30(b)(6) Anthony Campisciano                           August 30, 2016
Ascentium Capital vs. Adams Tank & Lift

Page 28

1   filed, I believe.

2        Q.   Okay.

3        A.   The demand letter.

4        Q.   Okay.  To your knowledge, does Ascentium

5   have any type of written agreement with Adams Tank

6   or Andy Adams?

7        A.   No.  To my knowledge, no.

8        Q.   Okay.  So what is it -- what do you base

9   your belief that Adams Tank should have done

10  something to protect Ascentium's interest?  I mean,

11  what do you base that belief on?

12       A.   Well, I believe that, pertaining to the

13  Jackson facility, he received $216,000 from us.  He

14  knowingly did not deliver the collateral on that

15  contract.  And he was, from what I understand,

16  funded on that equipment from Providence.

17            So in my mind, we should have been refunded

18  the entire $216,000 less whatever however many

19  payments Phoenix had made at the time.  Because I

20  believe they did pay.  I don't know if it was 10 or

21  12 payments.  I'd have to go back and look.

22            But we figured that -- we felt that we

23  should get the $216,000 back minus the payments that

24  have been made, because no items were delivered.  We

25  were not able to place a lien on any collateral

Case 1:15-cv-00123-LAG   Document 66-10   Filed 12/15/16   Page 3 of 11
Conf. 30(b)(6) Anthony Campisciano      August 30, 2016
Ascentium Capital vs. Adams Tank & Lift

Page 72

1    outlined in that paragraph of Item 7?
2         A.   Yes.
3         Q.   Okay.  And what is Ascentium's basis for
4    that claim?
5         A.   Well, the basis for the claim is Ascentium
6    funded Adams --
7         Q.   Okay.
8         A.   -- $216,000 to deliver specific items on an
9    invoice that Adams had provided us.
10        Q.   Okay.
11        A.   And to our knowledge, none of the items on
12   that invoice were ever delivered.
13             So we funded $216,000.  Collateral-wise or
14   equipment-wise, we feel that it's zero, so that's
15   why we feel that Adams owes the money.
16        Q.   Okay.  So if we look back at Exhibit 50 and
17   51, do -- do these exhibits not show that the
18   equipment -- that there was equipment provided at
19   the Jackson facility by Adams Tank?
20        A.   At the Jackson facility, the Ruby Sapphire
21   System was there still in boxes, and the Veeder Root
22   Tank Monitoring System was there still in boxes.
23   And I'm not sure if those were the items that were
24   specifically on his invoice to us.
25        Q.   Okay.

Case 1:15-cv-00123-LAG   Document 66-10   Filed 12/15/16   Page 4 of 11
Conf. 30(b)(6) Anthony Campisciano                           August 30, 2016
Ascentium Capital vs. Adams Tank & Lift

Page 73

```
 1        A.   Serial-number-wise.
 2        Q.   And then how about the other exhibit?
 3        A.   The other Jackson inspection, the pumps
 4   were viewed.  However, we learned that those pumps
 5   were not pumps that we had paid for.  They were paid
 6   for by another finance company.  So the pumps that
 7   we thought we were paying for on the invoice of
 8   $216,000 from Andy were never delivered.  These were
 9   somebody else's dispensers.
10        Q.   Was it also your opinion that the other
11   items you mentioned that are listed on Exhibit 50
12   were someone else's equipment or --
13        A.   I don't recall.
14        Q.   Okay.
15             All right.  Do you still have the
16   declaration in front of you?
17        A.   Yes, I do.
18        Q.   Okay.  Let's look at the -- I believe
19   they're called Composite Exhibit A.
20        A.   (Complies with request.)
21             Okay.
22        Q.   So is this a -- a standard format of a
23   printout in a computer system?
24        A.   Yes.
25        Q.   Okay.  And tell me -- there's a date at the
```

Case 1:15-cv-00123-LAG   Document 66-10   Filed 12/15/16   Page 5 of 11

Conf. 30(b)(6) Anthony Campisciano                August 30, 2016
Ascentium Capital vs. Adams Tank & Lift

Page 87

```
 1   what equipment is covered under this invoice in your
 2   Schedule A?
 3        A.   There are 10 gas dispensers.  There is
 4   something described as hanging hardware.  I'm not
 5   sure what that is.  And there is the dual terminal
 6   Ruby Sapphire System.  That's a point-of-sale
 7   system, from what I understand.
 8        Q.   Okay.
 9        A.   And that's it.
10        Q.   And then is there also a shipping and
11   handling?
12        A.   Oh, I'm sorry.  Yeah.
13        Q.   Okay.
14        A.   Yes, there is.
15        Q.   Okay.
16        A.   $2,025.
17        Q.   Okay.  All right.  Then if we flip the
18   page, the next two pages make up what appears to be
19   a guarantee by Mr. Masoodzadehgan?  Is that correct?
20        A.   I call him Ataollah, but yes, that's
21   correct.  I can't pronounce his last name.
22        Q.   Okay.
23        A.   Let me clarify that.  That is not
24   Mr. Ataollah's personal guaranty.  He is signing a
25   corporate guaranty for Falcon Entity, LLC.
```

Case 1:15-cv-00123-LAG   Document 66-10   Filed 12/15/16   Page 6 of 11
Conf. 30(b)(6) Anthony Campisciano
Ascentium Capital vs. Adams Tank & Lift
August 30, 2016

Page 88

1    Q.  Gotcha.  Okay.
2        And who is Falcon Entity, LLC?  Do you
3    know?
4    A.  From what I understand, that was another
5    entity that Ataollah owned.
6    Q.  Okay.
7    A.  He had two or three different entities.  I
8    think he had Phoenix, he had Falcon Entity, and he
9    had an entity called Great American Travel Center.
10   I'm not sure what those other two entities did.
11   Q.  So as to the Cairo 1 transaction,
12   Mr. Masoodzadehgan did not sign any personal
13   guaranties?
14   A.  He did.  It's on Page 1 of the face of the
15   EFA, two-thirds of the way down on the left.
16   Q.  Okay.  Gotcha.
17       Okay.  All right.  And then the next two
18   documents appears to be another guaranty, with the
19   guarantor, Great American Travel Center; is that
20   correct?
21   A.  Correct.  Signed by Ataollah.
22   Q.  Okay. All right.  Then the next document
23   is -- appears to be a UCC financing statement.  Is
24   that correct?
25   A.  That's correct.

Page 113

1    Q.  All right.  So just tell me what this
2    document is.  It's --
3    A.  This is a copy of the Cairo Number 2 job.
4    Q.  Okay.  And how do you know that?
5    A.  I recognize the agreement number.
6    Q.  Okay.
7    A.  And it also says, under collateral
8    location, Highway 14, Cairo, Georgia.
9    Q.  Okay.
10            All right.  Let's go -- does this -- if you
11   look down -- let's see.
12            Let's go to the third page.
13   A.  (Complies with request.)
14            Okay.
15   Q.  Do you see an invoice?
16   A.  I do.
17   Q.  Okay.  What's the date on that invoice?
18   A.  1/21/13.
19   Q.  Okay.  And what items of equipment are
20   represented on this invoice?
21   A.  It is the Carrol cooler, 12-door cooler and
22   beer cave, the eight-column gas canopy, and the
23   four-column diesel canopy.
24   Q.  Okay.
25            And this appears to be marked Schedule A.

Case 1:15-cv-00123-LAG   Document 66-10   Filed 12/15/16   Page 8 of 11
Conf. 30(b)(6) Anthony Campisciano              August 30, 2016
Ascentium Capital vs. Adams Tank & Lift

Page 119

1   A.   This would not be an ACH type of
2   authorization, I don't believe.
3   Q.   Okay.  Okay.
4   A.   And if you look at the payment histories,
5   it's got a check number on it.
6   Q.   Okay.
7   A.   And I'm not sure if that corresponds with
8   these, but it should.
9   Q.   Okay.
10  A.   But these were not -- this has nothing to
11  do with ACH.
12  Q.   All right.
13  A.   Matter of fact, if you look at -- if you
14  look at Exhibit 59 --
15  Q.   Okay.
16  A.   -- the second page in, where we tell them
17  how much we need, $2,341, there's the check for
18  $2,341.
19  Q.   Okay.  Great.
20  A.   So it corresponds.
21  Q.   All right.  Enough of that.
22       MR. MCKENZIE:  Next is going to be Exhibit
23  61.
24       (Defendant's Exhibit 61 marked.)
25  BY MR. MCKENZIE:

Page 120

1    Q.  Exhibit 61 is a version of Equipment
2    Finance Agreement Number 2118850 that was marked as
3    Exhibit 16, and used in the deposition as taken by
4    Ascentium of Andy Adams and Adams Tank employees.
5         If you want to take a look at it, and we
6    can talk about it.
7    A.  (Complies with request.)
8         Okay.
9    Q.  Okay.  So what is this document?
10   A.  This is a copy of the agreement for the
11   Jackson location.
12   Q.  Is this Exhibit 61?
13       MR. STINE:  Yeah.
14   A.  Yeah.
15   Q.  All right.  Let's go to the third page.
16   A.  Okay.
17   Q.  All right.  What is this?
18   A.  This is an invoice submitted from Adams
19   Tank to Ascentium for the Jackson equipment.
20   Q.  Okay.  And does this document appear
21   different than the other invoices that were
22   attached?
23   A.  Yes, it does.
24   Q.  Okay.  What's the date on this document?
25   A.  June 27th, 2013.

Case 1:15-cv-00123-LAG   Document 66-10   Filed 12/15/16   Page 10 of 11

Conf. 30(b)(6) Anthony Campisciano                                August 30, 2016
Ascentium Capital vs. Adams Tank & Lift

Page 128

1      Q.   The Cairo 1 and Cairo 2 exhibits.
2      A.   The answer is yes.
3      Q.   Okay.
4           And is that the same for the delivery and
5   acceptance certificate?
6      A.   Correct.
7      Q.   Okay.
8           Isn't it true that Mr. Masoodzadehgan or
9   his signatures on the delivery and acceptance ticket
10  on 6/27/13 -- is that --
11     A.   I'm sorry.  I didn't know that it was a
12  question.
13     Q.   On the delivery and acceptance.
14     A.   Could you repeat that, please?
15     Q.   Yeah.
16          What's the date that Mr. Masoodzadehgan's
17  name was signed to the delivery and acceptance
18  certificate?
19     A.   June 27th, 2013.
20     Q.   Okay.
21          Okay.  Let's look at -- okay.
22          MR. MCKENZIE:  This is going to be No. 62.
23          (Defendant's Exhibit 62 marked.)
24          MR. STINE:  Let's have a look.
25          MR. MCKENZIE:  I've got you one.

Case 1:15-cv-00123-LAG   Document 66-10   Filed 12/15/16   Page 11 of 11

Conf. 30(b)(6) Anthony Campisciano                       August 30, 2016
                  Ascentium Capital vs. Adams Tank & Lift

Page 129

1            MR. STINE:  Do you?
2            MR. MCKENZIE:  Yeah.
3            MR. STINE:  Thanks.
4    BY MR. MCKENZIE:
5        Q.  All right.  Take a look at Defendant's
6    Exhibit 62, and just let me know after you've had an
7    opportunity to just peruse through.
8        A.  This looks like the same documents we just
9    looked at in Exhibit 61, only it looks like these
10   were e-mailed from --
11       Q.  Okay.
12       A.  -- Phoenix Petroleum to Maria Negri.
13       Q.  Instead of faxed?
14       A.  Correct.
15       Q.  Okay.  All right.  So let's -- all right.
16   So what date were these items -- for the record,
17   Selina Barnard is my assistant who printed this
18   e-mail, and that's why her name is on the top.
19       A.  Okay.
20       Q.  So let's see.
21           All right.  So when was this document
22   e-mailed to Ascentium from Phoenix?
23       A.  June 27th, 2013.
24       Q.  Okay.  All right.  Let's just go through --
25   let's look at the first page.