## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

ASCENTIUM CAPITAL LLC,        :
                                :
       Plaintiff,             :
                                :
v.                                  :       CASE NO.: 1:15-CV-123 (LJA)
                                :
ADAMS TANK & LIFT INC, *et al.*,  :
                                :
       Defendants.         :
                                :

## <u>ORDER</u>

Before the Court are Plaintiff Ascentium's Motion for Partial Summary Judgment (Plaintiff's Motion), Doc. 66, and Defendants Adams Tank & Lift Inc. and Andrew J. Adams' Motion for Summary Judgment (Defendants' Motion), Doc. 69. Plaintiff has also moved to dismiss Defendant Ataollah Masoodzadehgan as a party. Doc. 72. For the reasons stated below, Plaintiff's Motion for partial summary judgment, Doc. 66, is **GRANTED in part and DENIED in part**, and Defendants' Motion for summary judgment, Doc. 69, is **GRANTED in part and DENIED in part**. Plaintiff's Motion to dismiss a party, Doc. 72, is **GRANTED**.

## I. BACKGROUND

Plaintiff Ascentium Capital, LLC (Ascentium) initiated this action on July 24, 2015. Doc. 1. On September 14, 2016, with leave from the Court, Plaintiff filed an Amended Complaint, which is now the operative Complaint as to Defendants Phoenix Petroleum, LLC (Phoenix), Adams Tank & Lift, Inc. (AT&L), Andrew J. Adams (Adams), Great American Travel Center, LLC (American), and Ataollah Masoodzadehgan (A.M.). Doc. 55. Plaintiff's Complaint as amended asserts nine causes of action: (1) three claims of breach of contract against Defendants Phoenix, American, Falcon Entity, LLC (Falcon), and A.M.; (2) money had and received against AT&L; (3) conversion against Phoenix and AT&L; (4)

unjust enrichment against AT&L; (5) breach of contract against AT&L; (6) fraud against Phoenix, A.M., AT&L, and Adams; and (7) attorney's fees against all Defendants.

Plaintiff Ascentium is a lending company. *See* Doc. 66-2 ¶ 5. Phoenix is the owner and operator of several gas stations. *See* Doc. 66-2 ¶ 3. American and Falcon are LLCs owned by A.M. Docs. 66-2 ¶¶ 22-23; 55 ¶ 11. A.M. is the principle member and operator of Phoenix, American, and Falcon. American, Falcon, and A.M. were guarantors on loans between Phoenix and Plaintiff. Docs. 66-2 ¶¶ 22-23; 55 ¶ 11. AT&L operates a business that sells, installs, and services fuel and service station-related equipment in Georgia to operators such as Phoenix. Doc. 66-2 ¶ 1. Adams is the President of AT&L and communicated directly with Plaintiff during the course of AT&L's business dealings with Plaintiff and Phoenix. Doc. 66-2 ¶ 2. AT&L and Adams had an ongoing business relationship with both Phoenix, as a supplier of equipment, and Plaintiff, as a vendor with whom Plaintiff had a preferred status as a lender. *See* Doc. 66-2.

On December 15, 2016, Plaintiff and Defendants AT&L and Adams moved for partial summary judgment and summary judgment respectively.[1] Docs. 66 & 69. Plaintiff seeks summary judgment (1) on claims I, II, and III against Phoenix, American, and Falcon and (2) on claims IV, V, and VI against AT&L. Doc. 66-1 at 22. Defendants AT&L and Adams seek summary judgment against Plaintiff as to claims IV, V, VI, VII, VIII, and IX. Doc. 69-1 at 29. Plaintiff and Defendants AT&L and Adams filed timely responses and replies to the respective Motions. Docs. 78, 81, 84, 85. Defendants Phoenix, American, and

---

[1] On December 12, 2016, the Court granted the parties' Joint Motion, Doc. 64, for extension of the page limit—each side seeking an additional ten (10) pages—on their motions for, and responses to, summary judgment. Docs. 64 & 65. As noted in the Local Rule 7.4, such an extension is warranted when good cause is shown. There appeared to be no such need for a page extension in this matter as the most basic editing to limit inapposite citations to authority, painful hyperbole, and unnecessary metaphors and asides would have allowed the parties to present cogent arguments within the parameters set by the Local Rules. For example, Defendant wasted sixty (60) words on this passage:

> Not without parallels to the mythical story, this case at its heart is about the rise, fall and crash of a Phoenix, the defendant Phoenix Petroleum LLC ("Phoenix"). The pilot for its flight was its sole member and President Ataollah Masoodzadehgan ("Ataollah"). . . . At the apex of its flight in 2014, the sales of Phoenix were over $100,000,000.

Doc. 69-1 at 1. This added absolutely nothing to the legal analysis and did not address Defendants' case in the least. Defendants' briefs are replete with such unnecessary verbiage, and Plaintiff's briefs are not without fault either. The parties are admonished to be more diligent with the Court's time and their clients' money in future filings.

Falcon neither responded to Plaintiff's Motion nor joined Defendants AT&L and Adams' Motion. *See* Docket.

## II. FACTS[2]

This case revolves around a deal to equip two gas stations in Cairo and Jackson, Georgia. Phoenix and its managing member, A.M., owned the gas stations and ostensibly wanted to purchase equipment for the stations from AT&L, an equipment vendor. Phoenix and A.M. needed financing for the deal and sought it from Plaintiff, AT&L's preferred lender, advising Plaintiff that the loans were for the purchase of equipment and promising Plaintiff a security interest in the equipment. Plaintiff provided the loans, but much of the equipment was never purchased. Instead, after AT&L received the money, Phoenix and A.M. asked AT&L to refund the loan proceeds to Phoenix. Although AT&L knew that the loan had been made for the express purpose of funding the equipment purchase, it nevertheless directed a large portion of the loan funds to Phoenix. Due in large part to its own sloppy procedures and failure to conduct due diligence, Plaintiff did not discover that it had been duped and had no security to protect its interests for two years. The details of this scheme are as set forth below.

### A. The Cairo Project

In October 2012, AT&L prepared a proposal at Phoenix's request to provide fuel dispensers, related hardware and equipment, a POS system, an interior cooler, and canopies for Phoenix's location in Cairo, Georgia (the Cairo Project). Doc. 69-2 ¶ 13. The parties sought funding from Plaintiff, and on September 27, 2012, Len Baccaro, Plaintiff's Senior Vice President of Sales, sent Adams an email requesting information on the Phoenix transactions. Doc. 69-3 at 153. On November 14, 2012, Adams responded to Baccaro's email detailing $521,908.17 worth of equipment and services for the Cairo Project proposal and for equipment for another project that had been delayed, a 2011 project in Jackson, Georgia. Docs. 69-3 at 152; 69-2 ¶ 16. In January 2011, AT&L entered into a contract with

---

[2] The relevant facts are derived from the parties' statements of material facts and responses thereto, and the record in this case. Docs. 66, 69, 78, 81, 84, 85. Where relevant, this factual summary also contains undisputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiff as the non-moving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Phoenix to supply and install equipment at Phoenix's location in Jackson, Georgia for $340,939.00 (the Jackson Project). Doc. 69-2 ¶ 7. In the Spring of 2011, AT&L while installing certain equipment, stopped work because of building and sewer issues with Butts County, Georgia, leaving a $22,454.20 balance on the work done for Phoenix. Doc. 69-2 ¶¶ 8-10. According to AT&L, the remaining equipment and services were to be paid for at a later date once they were delivered and installed by AT&L. Doc. 69-2 ¶ 11.

On November 26, 2012, AT&L sent Phoenix an unsigned proposal for the Cairo site totaling $143,058.00 plus tax for fuel dispensers, related hardware and equipment, and a POS system. Docs. 69-2 ¶ 17, 19; 81-1 ¶ 17, 19. AT&L sent the Cairo proposal to Plaintiff on December 5, 2012. Docs. 69-2 ¶ 19; 81-1 ¶ 19. On or around December 11, 2012, upon receipt of the Cairo proposal from AT&L, Plaintiff emailed Adams stating: "So far [A.M. and Phoenix] have been approved for 250k without using any financials." Doc. 69-2 ¶¶ 20, 21. On January 10, 2013, Baccaro emailed Adams indicating he "had a nice chat" with A.M. of Phoenix, and that "he should be calling [AT&L] about the invoices" for the Cairo site. Doc. 69-2 ¶ 23. Adams then included a cooler and canopies in the invoice Plaintiff was requesting in relation to the $250,000.00 Plaintiff agreed to loan Phoenix. Doc. 69-2 ¶ 25. Thus, on January 18, 2013, Adams sent a single invoice to Phoenix and Plaintiff totaling $249,995.00 for fuel dispensers, related equipment and hardware, a POS System, canopies, and a cooler for the Cairo site. Doc. 69-2 ¶ 27.

On January 21, 2013, Plaintiff instructed Adams, via email, to split the invoice into two invoices—one for $150,000.00, and one for $100,000.00, which in total would equal the $250,000.00 of financing Baccaro had stated Phoenix had previously been approved for by Plaintiff. Docs. 66-2 ¶ 8; 78-2 ¶ 8. Thereafter, AT&L forwarded invoice number 2640474 for $150,000.00 and invoice number 2640475 for $100,000.00 to Plaintiff. Doc. 69-2 ¶ 29.

Plaintiff agreed to finance Phoenix's purchase of the Cairo equipment by advancing 100% of the purchase price of the equipment to AT&L on Phoenix's behalf. Doc. 66-2 ¶¶ 5, 6. Phoenix and Plaintiff entered into two written agreements, each labeled "EQUIPMENT FINANCE AGREEMENT," as part of Plaintiff's financing of Phoenix's purchase of the Cairo equipment—agreement numbers 2116122 and 2118557 (the Cairo Agreements). Docs.

66-2 ¶ 9; 55-1 at 2-5; 1-1 at 2-5. The Agreements had repayment terms of sixty (60) payments of $3,069.00 and $2,046.00 respectively. *See* Docs. 68; 55-1 at 2-5; 1-1 at 2-5. Subsequent to the signing of the Cairo Agreements, the invoices from AT&L were stamped by Plaintiff, labeled "Schedule A," and attached to the Cairo Agreements; and the agreement numbers were written on the invoices.[3] Doc. 69-2 ¶ 30.

Falcon and American each executed two guaranties in Plaintiff's favor on the Cairo Agreements. Docs. 66-2 ¶ 22, 23; 55-2 at 2-5; 1-2 at 2-5; 55-3 at 2-5; 1-3 at 2-5. The guaranties, attached to the Complaint and Plaintiff's Motion, stated that the guarantors:

> [H]ereby unconditionally guarantee and promise on demand (i) to pay [Plaintiff] . . . sums required to be paid under the terms of (A) the . . . equipment finance agreement . . . whose Agreement number is referenced above, . . . entered between [Plaintiff] and Phoenix Petroleum, LLC, . . . and (B) any document relating to such Agreement . . . in the amounts, at the times and in the manner set forth in such Agreement or Other Documents.

Docs. 66-2 ¶ 23; 55-3 at 2-5; 1-3 at 2-5.

On January 25, 2013, and January 28, 2013, Plaintiff wired two payments to AT&L totaling $225,000.00—90% of the purchase price of the Cairo equipment. Docs. 66-2 ¶ 13; 69-2 ¶ 32. Phoenix then requested that AT&L refund Phoenix $100,000.00 of the wired funds since AT&L was not supplying Phoenix with the canopies or the cooler. Doc. 69-2 ¶ 37. Without notifying Plaintiff, AT&L sent $100,000.00 of the loan funds to Phoenix. Docs. 69-2 ¶ 39; 66-2 ¶ 17; 78-2 ¶ 17. AT&L retained the remaining money necessary to pay for equipment and services AT&L provided at the Cairo site under the November 2012 contract proposal with Phoenix. Docs. 66-2 ¶ 16; 78-2 ¶ 16.

Plaintiff did not learn of the cancellation of the Cairo orders or the diversion of funds to Phoenix until more than two years later. Doc. 66-2 ¶¶ 19, 20. On or around March 29, 2013, after receiving an email from Adams that inquired about further funding from Plaintiff and indicated that the dispensers were at the Cairo site, Plaintiff, unaware of the diversion of previously provided funds and cancelled purchases, wired $25,000.00 to AT&L—the last 10% of the purchase price of the Cairo equipment. Docs. 66-2 ¶ 15; 69-2 ¶ 44.

---

[3] Plaintiff recorded two UCC-1 financing statements in Barrow County, Georgia on January 24, 2013, and January 25, 2013, with the intention of perfecting a security interest in the Cairo equipment. Doc. 66-2 ¶ 21.

## B. The Jackson Project

Between August and September 2012, Len Baccaro of Ascentium requested information from AT&L about the Jackson Project which previously had been put on hold. Doc. 69-2 ¶ 12. Baccaro requested this information after a phone conversation Baccaro had with A.M. about financing the project. Doc. 69-2 ¶ 12. On January 2, 2013, while discussing the Cairo Project, Baccaro forwarded the prior Jackson contract from 2011 to Adams via email and inquired as to the status of the work at the Jackson site. Doc. 69-2 ¶ 22. On or about June 3, 2013, Plaintiff informed AT&L that it approved the financing of $240,000.00 to Phoenix for the Jackson Project. Doc. 69-2 ¶ 46.

Also in June 2013, Phoenix placed an order with AT&L for the purchase and installation of additional equipment for the Jackson Project. Doc. 66-2 ¶ 24. On June 11, 2013, Adams sent Plaintiff and Phoenix a revised proposal for the Jackson Project dated June 4, 2013, for $240,000.00 as requested by Phoenix, which included a portion of the equipment and work from the prior Jackson contract dated January 25, 2011, that had not been completed. Doc. 69-2 ¶ 47. On June 24, 2013, Plaintiff forwarded notification of its formal approval of the loan to AT&L. Doc. 69-2 ¶ 48. On June 27, 2013, Adams and AT&L were asked by Plaintiff to create an invoice for $240,000.00 for the AT&L work described in the June 4, 2013 proposal. Docs. 69-2 ¶ 50; 81-1 ¶ 50; 66-2 ¶ 32; 78-2 ¶ 32. AT&L, at the direction of Adams, submitted an itemized invoice to Plaintiff. Doc. 69-2 ¶ 51. AT&L provided the requested invoice dated June 27, 2013, to Plaintiff. *Id.*

On or around June 28, 2013, Plaintiff and Phoenix entered into an agreement labeled "EQUIPMENT FINANCE AGREEMENT," agreement number 2118850 for the Jackson Project. Docs. 55-5 at 2-3; 1-5 at 2-3. The agreement had repayment terms of sixty (60) payments of $4,632.53.00 (the Jackson Agreement). *See* Docs. 68; 55-5 at 2-3; 1-5 at 2-3. The invoices for the Jackson Project were not included as schedules to the Jackson Agreement when executed but later were added as "Schedule A" to the Jackson Agreement by Plaintiff.[4] Doc. 69-2 ¶ 53. Phoenix also signed and submitted a delivery and acceptance certificate to Plaintiff in connection with the Jackson Agreement. Doc. 66-2 ¶ 34. The delivery certificate

---

[4]     Plaintiff recorded a UCC-1 financing statement in Barrow County, Georgia on June 28, 2013, with the intention of perfecting a security interest in the Jackson equipment. Doc. 66-2 ¶ 40.

stated that AT&L delivered and installed all of the Jackson equipment at the Jackson facility. Doc. 66-2 ¶ 35. Plaintiff admits that it often had customers sign a delivery and acceptance certificate to be made part of each agreement before equipment was actually delivered to a project site. Doc. 69-2 ¶ 93.

Plaintiff agreed to finance Phoenix's purchase of the Jackson equipment by advancing 100% of the purchase price of the equipment to AT&L on Phoenix's behalf. Doc. 66-2 ¶ 30. Plaintiff required Phoenix's authorization before it provided any funds to AT&L. Doc. 69-2 ¶ 94. Once authorized, Plaintiff advanced 90% of the purchase price of the Jackson equipment by wiring $216,000.00 to AT&L on or about July 1, 2013. Doc. 66-2 ¶ 33. Falcon and American each executed a guaranty in Plaintiff's favor in relation to the Jackson Agreement. Docs. 66-2 ¶¶ 27, 28; 55-6 at 2-3, 4-5; 1-6 at 2-3, 4-5. The guaranties, attached to the Complaint and Plaintiff's Motion, were identical to those executed for the Cairo Agreements. Docs. 66-2 ¶ 28; 55-6 at 4-5; 1-6 at 4-5.

After Plaintiff wired the Jackson funds to AT&L, Phoenix, AT&L, and Adams agreed that Phoenix would cancel the Jackson order, AT&L would disburse a portion of the wired funds to Phoenix, and AT&L would apply the balance of the Jackson funds—$79,671.97— toward the payment of bills and items in dispute between AT&L and Phoenix. Doc. 66-2 ¶ 36. As outlined in a July 3, 2013 email from AT&L's controller Pauline Strach, Phoenix requested that 50% of the Cairo cooler price, minus installation costs, be paid out of its Jackson funds received by AT&L on July 3, 2013. Doc. 69-2 ¶ 58. As directed by Phoenix, of the $216,000.00 AT&L received on July 3, 2013, AT&L applied $18,543.88 as a payment on the contract for the Cairo cooler. Doc. 69-2 ¶ 59. AT&L then sent $36,328.03 to Phoenix by a wire transfer Doc. 69-2 ¶ 61. On July 15, 2013, AT&L complied with a second request from Phoenix[5] and wired Phoenix an additional $100,000.00. Doc. 69-2 ¶ 65. Thus, Adams and AT&L made two disbursements from the loan funds totaling $136,328.03 to Phoenix. Docs. 66-2 ¶¶ 37, 38; 78-2 ¶¶ 38, 44. Plaintiff was not notified about this agreement or the disbursements. *Id.*

---

[5] After receiving Strach's email outlining the parties' agreement for application of the loan funds, later on July 3, 2013, A.M. forwarded Strach's message to Adams and directed "I am traveling do not order any pumps until I get back." Doc. 69-2 ¶ 62. A.M. sent Adams an e-mail that said, "Hold up I might have to send the money back." Doc. 69-2 ¶ 63.

Plaintiff alleges that standard industry practice was for AT&L to notify Plaintiff that the Jackson equipment order was cancelled and for AT&L to refund all moneys not used to purchase said equipment. Doc. 69-2 ¶¶ 82, 83. Plaintiff, AT&L, and Adams agree that they had no record of any borrower, other than Phoenix, who has received a refund of a third-party lender's funds from AT&L after a cancellation of an order. Doc. 66-2 ¶ 48. The parties also agree that no one from Plaintiff met with anyone from Phoenix in person, or inspected the project sites before agreeing to loan and wire money for the Cairo or Jackson Projects. Doc. 69-2 ¶ 91. The parties dispute whether Plaintiff asked Adams or AT&L about Phoenix's use of the wired funds or the status of work at the Jackson site. Furthermore, Baccaro indicated that he and other sales people were charged with keeping track of financed projects, but noted that he paid little attention to these projects after funding the initial 90% and being paid his sales commission. Doc. 69-2 ¶ 92.

### C. Discovery of the Scheme

In the Fall of 2014, AT&L supplied Phoenix with the fuel pump equipment and services listed in the January 2011 Jackson contract. Plaintiff alleges AT&L never delivered or installed the Jackson equipment that Plaintiff says was to be purchased under the Jackson Agreement. Adams and AT&L assert that, in 2014, another finance company paid for the equipment listed in the 2011 Jackson contract and then leased it back to Phoenix at the Jackson facility. Doc. 69-2 ¶ 74.

Phoenix made monthly payments to Plaintiff until October 2014. Docs. 66-2 ¶ 42; 78-2 ¶ 42. Plaintiff asserts that it did not learn of the cancellation of the Jackson equipment order or the agreement between Phoenix and AT&L to use the Jackson funds for other purposes until more than two years later. Doc. 66-2 ¶ 39. AT&L and Adams deny this. Doc. 78-2 ¶ 39. On June 2, 2015, Plaintiff demanded return of the Jackson funds from AT&L. Doc. 66-2 ¶ 50. On June 29, 2015, AT&L refused Plaintiff's demand. Doc. 66-2 ¶ 51. Phoenix never responded to Plaintiff's demand or returned any of the Jackson funds. Doc. 66-2 ¶ 52. Plaintiff admits that any money paid to AT&L was paid "on behalf of the customer," and that "the vendor controls the money" once paid to the vendor. Doc. 69-2 ¶ 94.

Phoenix made monthly payments to Plaintiff pursuant to the Cairo (and subsequent Jackson) Agreements, until October, 2014. Docs. 66-2 ¶ 42; 78-2 ¶ 42. As of September 14, 2016, the accelerated balance due Plaintiff under the first Cairo Agreement was approximately $45,827.56 principal plus $7,791.04 interest, totaling $53,618.60. Doc. 66-2 ¶ 54. Plaintiff seeks pre-judgment interest accruing on the unpaid balance of the first Cairo Agreement from September 14, 2016, at the default rate of 16.00% per annum or $20.08 per day. Doc. 66-2 ¶ 55. As of September 14, 2016, the accelerated balance due Plaintiff under the second Cairo Agreement was approximately $30,551.71 principal plus $2,140.69 interest, totaling $32,692.40—with pre-judgment interest accruing on the unpaid balance of the second Cairo Agreement from September 14, 2016, at the default rate of 16.00% per annum or $13.39 per day. Doc. 66-2 ¶ ¶ 56, 57. After Phoenix defaulted on its loans, all the equipment specified in AT&L invoice numbers 2640474 and 2640475 was sold by Plaintiff. Doc. 69-2 ¶ 98.

Plaintiff alleges that, as of September 14, 2016, the accelerated balance due Plaintiff under the Jackson Agreement is approximately $166,562.56 principal plus $3,895.10 late charges and $30,810.22 interest, totaling $201,267.88. Doc. 66-2 ¶ 58. Plaintiff seeks pre-judgment interest accruing on the unpaid balance of the Jackson Agreement from September 14, 2016, at the default rate of 16.00% per annum or $73.01 per day. Doc. 66-2 ¶ 59. Defendants Adams and AT&L dispute these calculations.

## III.    MOTIONS FOR SUMMARY JUDGMENT
### LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends that no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is

sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cty.*, 552 F. App'x 902, 904 (11th Cir. 2014).

"An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Allen*, 121 F.3d at 646.

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24; *Barreto*, 331 F. App'x at 673. Local Rule 56 further requires that "documents and other record materials relied upon by [the moving party] be clearly identified for the court." M.D. Ga. L.R. 56. "Material facts not supported by specific citation to particular parts of materials in the record and statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court." *Id.*

"When that burden has been met, the burden shifts to the nonmovant . . . to go beyond the pleadings and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 556-57 (11th Cir. 2014) (internal citations omitted). "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56; *see also Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

"In the Eleventh Circuit, a district court cannot grant a motion for summary judgment based on default or as a sanction for failure to properly respond." *U.S. v. Delbridge*, 2008 WL 1869867, at *3 (M.D. Ga. Feb. 22, 2008) (citing *Trs. of Cent. Pension Fund of Int'l Union of Operating Eng'rs and Participating Emp'rs v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004)). Rather, the Court is "required to make an independent review of the record" and assess the merits of the arguments before deciding the summary judgment motion; however, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Mason*, 24 F. Supp. 3d at 1260-61 (explaining that a court is not obligated to "read minds" or "construct arguments or theories" that a party did not raise).

Courts must evaluate cross-motions for summary judgment separately, "as each movant bears the burden of establishing that no genuine issue of material facts exists, and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004); *see also D & H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co.*, 640 F.3d 27, 34 (1st Cir. 2011) ("When there are cross-motions for summary judgment, the court must consider each motion separately, drawing all inferences in favor of each non-moving party in turn.").

## DISCUSSION

### A. Plaintiff's Motion for Summary Judgment

#### 1. Claims I, II, and III Against Phoenix and American: Breach of Contract

Plaintiff alleges that Phoenix and American breached three equipment finance agreements and their attendant guaranties. "Under Georgia law, the elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken."[6] *Shibo Seki v. Groupon, Inc.*, 775

---

[6] The contracts at issue prepared by Plaintiff have choice of law clauses that designate New Jersey law as the governing law for the contracts. However, in their Motions, the parties cite Georgia law for the breach of contract claims. While "the law of the jurisdiction chosen by parties to a contract to govern their contractual rights will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state," *CS-Lakeview at Gwinnett, Inc. v. Simon Prop. Grp., Inc.*, 659 S.E.2d 359, 361 (Ga. 2008), the elements for breach of contract are identical in New Jersey and Georgia, *compare Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016), *with Shibo Seki v. Groupon, Inc.*, 775 S.E.2d 776, 779 (Ga. Ct. App. 2015), as is the rule barring double recovery, *compare Pope v. Craftsman Builders, Inc.*, 2013 WL 105283,

S.E.2d 776, 779 (Ga. Ct. App. 2015) (citations and punctuation omitted). "A breach occurs if a contracting party . . . fails to perform . . . as specified in the contract." *Id.* Further, a guaranty is a contract "whereby a person obligates himself to pay the debt of another in consideration of a benefit . . . or in consideration of . . . benefit given to his principal, the principal in either instance remaining bound therefor. [G]uarantors[ ] are jointly and severally liable with their principal unless the contract provides otherwise." O.C.G.A. § 10-7-1. A creditor in possession of a guarantee establishes a *prima facie* case for repayment by producing a valid guarantee and showing that it was executed. *CSS Real Estate Dev. I, LLC v. State Bank & Trust Co.*, 749 S.E.2d 773, 774 (Ga. Ct. App. 2013). After a *prima facie* case is established, summary judgment may be granted if the guarantor is unable to establish a defense in rebuttal. *Id.*

Plaintiff has put forth evidence showing that valid contracts existed between Plaintiff and Phoenix and between Plaintiff and American. Phoenix and Plaintiff executed three equipment finance agreements with repayment terms of sixty (60) payments of $3,069.00, $2,046.00, and $4,632.53.00 respectively. Plaintiff has shown that Phoenix breached these three agreements by failing to make the required payments starting in October 2014. Phoenix has not responded to Plaintiff's Motion, and the record does not indicate that Phoenix has a defense against Plaintiff's breach of contract claims. Likewise, Plaintiff has shown that American signed a guaranty relating to the three equipment finance agreements between Plaintiff and Phoenix. The record does not indicate that American has a defense for its breach.[7] Accordingly, summary judgment is appropriate on these claims.

---

at *7 (N.J. Super. Ct. App. Div. Jan. 10, 2013), *with Graybill v. Attaway Constr. & Assocs., LLC*, 2017 WL 2628442, at *5 (Ga. Ct. App. June 19, 2017). Thus, for the sake of consistency, the Court will apply Georgia law.

[7]     The three equipment finance agreement guaranties in question state that American and Falcon are liable for Phoenix's obligations under the equipment finance agreements "upon demand." Docs. 66-2 ¶ 23; 55-3 at 2-5; 1-3 at 2-5; 66-2 ¶ 28; 55-6 at 4-5; 1-6 at 4-5. The agreements do not specify what constitutes a demand. The demand requirement is essentially a notice requirement. *See Lockwood v. Fed. Deposit Ins. Corp.*, 767 S.E.2d 829, 832-33 (Ga. Ct. App. 2014). Thus, Plaintiff's first Complaint is construed as a demand pursuant to the guaranties. *Cf. id.* ("[N]otice, [in the form of a pleading], under [O.C.G.A. § 13-1-11] may be given any time between the maturity of the obligation and ten days prior to judgment.").

## 2. Claim IV Against AT&L: Money Had and Received

Plaintiff asserts a claim for money had and received[8] against AT&L for funds Plaintiff wired AT&L pursuant to the contract between Phoenix and Plaintiff, the agreement between Phoenix and AT&L, and the communications between Plaintiff and AT&L. "In order to sustain an action for money had and received, a party must show . . . that an entity has received money justly belonging to another, [and] that [the party] made a demand for payment and was refused." *City of Atlanta v. Hotels.com*, 710 S.E.2d 766, 770 (Ga. 2011). "Such action is a legal action based upon equitable principles for implied assumpsit as a substitute for suit in equity." *Taylor v. Powertel, Inc.*, 551 S.E.2d 765, 770 (Ga. Ct. App. 2001). Thus, a claim for money had and received is a claim grounded in the existence of an implied-in-fact contract. *Cantrell v. Henry Cty.*, 301 S.E.2d 870, 872 (Ga. 1983) ("The form of the action of assumpsit . . . is founded on what the law terms an implied promise on the part of the defendant to pay what in good conscience he is bound to pay the plaintiff."). When analyzing claims for money had and received, Georgia courts have held that "[w]hen the special purpose for which defendant held plaintiff's funds failed, it became defendant's duty to return same to plaintiff." *Fed. Emp. Credit Union v. Capital Auto. Co.*, 183 S.E.2d 39, 40-41 (Ga. Ct. App. 1971). It is no defense that a defendant no longer has a plaintiff's funds or that the defendant gave the funds to a third party. *Id.* at 41.

Here, Plaintiff and AT&L had an implied-in-fact contract whereby Plaintiff agreed to fund the Jackson Project—to which AT&L was a party. Plaintiff wired funds to AT&L to facilitate the Jackson Project to the benefit of Phoenix and AT&L. In exchange for providing the money, Plaintiff was to receive a secured interest in the equipment which was the subject of the Jackson Agreement. In the event of a default, Plaintiff would have had the

---

[8]    Again, the parties cite Georgia law in their Motions and Responses regarding the claim for money had and received. Plaintiff is a Texas corporation, *see* Doc. 1, but a claim for money had and received in Texas is nearly identical to such a claim in Georgia. *Compare H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App. 2012) (Texas "courts use [the] term "money had and received" interchangeably with other terms for similar claims, including assumpsit, [and] unjust enrichment."), *with Taylor v. Powertel, Inc.*, 551 S.E.2d 765, 770 (Ga. Ct. App. 2001) ("Money had and received, while a legal doctrine is based on principles of equity."). Under conflict of law principles, Georgia law would apply as money had and received is essentially an equitable doctrine. *Simpson Consulting, Inc. v. Barclays Bank PLC*, 490 S.E.2d 184, 193 (Ga. Ct. App. 1997), *overruled on other grounds by Williams Gen. Corp. v. Stone*, 614 S.E.2d 758 (Ga. 2005). Thus, the Court will apply Georgia law.

authority to sell that equipment. By cancelling the Jackson order and diverting the loan funds, Plaintiff was deprived of the security interest and the value of said interest upon Phoenix's default. Thus, as discussed below, with respect to AT&L, Plaintiff is entitled to damages from AT&L's breach.

The record is clear that AT&L was aware that Plaintiff was loaning money to Phoenix for the purchase of equipment at the Jackson site. AT&L negotiated with Plaintiff for the loan, specifying that it was for the purchase of equipment for the Jackson Project. This is evidenced through the emails between Adams and Baccaro to secure the loan for the Jackson Project and the proposal Adams sent to Plaintiff. Pursuant to these emails and the proposal, Plaintiff wired $216,000.00 to AT&L. It strains credulity to assert, as AT&L does, that Plaintiff did not intend those funds to be applied to Phoenix's equipment purchase or that AT&L did not understand the purpose of the funds. AT&L provided quotes, prepared documents used to secure the Jackson loan, and accepted the wired funds in order to reap the benefit of completing a sale to Phoenix. There is no evidence that Plaintiff agreed to the loan with the understanding that the funds would be used to settle the financial disputes between AT&L and Phoenix or to pay for equipment covered under the Cairo Agreements—neither of which gave Plaintiff the security interest promised under the Jackson Agreement.

Under Georgia law, once the purpose of the loan failed (or was cancelled), AT&L should have returned the funds to Plaintiff. *See Capital Auto. Co.*, 183 S.E.2d at 40-41. In *Capital Auto*, a party in receipt of loan funds from a bank failed to apply those funds as intended and was held liable. *Id.* The Court of Appeals of Georgia discussed *Capital Auto* in a subsequent case, writing:

> [A] bank issued a check for its customer to buy a car. The dealer cashed the check with the conditional endorsement but gave the money to the customer rather than selling him the car. The bank never obtained a perfected security interest in the car, and the customer defaulted and absconded. The court held that the dealer was liable to the bank under the doctrine of money had and received because the dealer should have returned the money when the purpose for the check, buying the car, failed, and it could not now, in good conscience, retain the money.

*Suntrust Bank, Atlanta v. Atlanta Classic Cars, Inc.*, 549 S.E.2d 523, 525 (Ga. Ct. App. 2001) (citing *Capital Auto. Co.*, 183 S.E.2d at 40-41). Another Court of Appeals of Georgia case, *Time Ins. Co. v. Fulton-DeKalb Hosp. Auth.*, 438 S.E.2d 149 (Ga. Ct. App. 1993), upon which AT&L relies, is inapposite. The court in *Time* held that payments made by an insurer for services rendered at or close in time to when the payments for such services were made could not be recouped against the hospital that provided the services under a theory of money had and received, as such recoupment would be inequitable. 438 S.E.2d at 151-152. AT&L admits that it retained funds for the payment of charges unrelated to or incurred prior to the purchase or installation of equipment contemplated by agreement between the parties. The wired funds were for the purchase of the equipment set forth in the Jackson Agreement, and there is no evidence to support AT&L's argument that the wired funds were meant to pay for anything other than what was detailed in the Jackson Agreement.

AT&L's argument that Plaintiff was not the true owner of the funds also misses the mark. AT&L relies on *William N. Robbins, P.C. v. Burns*, 488 S.E.2d 760, 763 (Ga. Ct. App. 1997), for the proposition that Phoenix, not Plaintiff, was the owner of the funds. However, *Burns* merely stands for the proposition that a plaintiff must be entitled to the money she seeks in a money had and received claim. In *Burns*, the court held that a law firm was not the true owner of funds sent to a former associate of that firm, by clients of the associate, for work done by that associate after he had left the firm's employment. *Id.* The court held that, while the firm may have had a breach of contract claim for the associate's failure to adhere to a file organization arrangement, the funds sent by the associate's clients were not intended to be sent to the firm. *Id.* Thus, the firm was not the "true owner" of the funds, and a claim for money had a received failed. *Id.* Here, however, Plaintiff intended that the funds be sent to AT&L for the purchase of the equipment, and, for these purposes, was the true owner of the funds.

While a failure to send the funds to either AT&L or Phoenix would have put Plaintiff in breach of the contract it had with Phoenix, this does not change the fact that once the purpose of the wired funds was altered, AT&L was obligated to return the funds to Plaintiff. Accordingly, there is no genuine issue of material fact with regard to the implied-in-fact

contract between Plaintiff and AT&L, and Plaintiff is entitled to recover under a theory of money had and received.

### 3. Claim V Against AT&L: Conversion

Plaintiff also asserts a claim for conversion against AT&L for funds Plaintiff wired AT&L pursuant to the contract between Phoenix and Plaintiff for the Jackson Project. In Georgia, "[c]onversion involves the unauthorized assumption and exercise of the right of ownership over personal property belonging to another, contrary to the owner's rights. Any distinct act of dominion wrongfully asserted over another's property . . . inconsistent with [the owner's rights], is a conversion." *Deere & Co. v. Miller-Godley Auction Co.*, 549 S.E.2d 762, 764 (Ga. Ct. App. 2001). "To establish a claim for conversion, a plaintiff must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." *City of Atlanta v. Hotels.com, L.P.*, 775 S.E.2d 276, 279 (Ga. Ct. App. 2015) (citation and punctuation omitted). "Right of possession means either actual possession or the right to immediate possession." *Habel v. Tavormina*, 597 S.E.2d 645, 648 (Ga. Ct. App. 2004) (citations and punctuation omitted). Funds disbursed via wire transfer are a proper subject for a conversion claim. *Trey Inman & Assocs., P.C. v. Bank of Am., N.A.*, 702 S.E.2d 711, 717 (Ga. Ct. App. 2010) (holding that funds disbursed via wire transfer were specific and identifiable).

Here, AT&L argues that, because either Plaintiff did not have a secured interest in the Jackson equipment or because AT&L was not aware of Plaintiff's security interest in the Jackson equipment, Plaintiff's conversion claim must fail. Plaintiff's claim is, however, for the conversion of the wired funds that should have been used for the purchase of equipment at the Jackson site. The evidence establishes that: (1) in order to facilitate the Jackson transaction, Plaintiff agreed to lend Phoenix $216,000.00 for the purchase of equipment; (2) Plaintiff wired $216,000.00 to AT&L for the purchase of the equipment by Phoenix; (3) unbeknownst to Plaintiff, AT&L cancelled the Jackson equipment order and redirected $136,328.03 to Phoenix without notifying Plaintiff; (4) AT&L kept $79,671.97 of the funds

provided by Plaintiff; (5) once Plaintiff became aware that no equipment had been purchased, Plaintiff demanded the return of its funds; and (6) AT&L refused this demand.

The issue, then, is whether or not Plaintiff had title or the right of possession to the funds at the time of the alleged conversion, that is, whether Plaintiff owned the funds that it wired to AT&L *at the time* Phoenix cancelled the Jackson equipment order. The parties do not cite mandatory authority on this issue, and the Court has found none. An analysis of relevant case law indicates that once a loan is made and the proceeds disbursed, the actual funds cease to be the property of the lender. "The word 'loan' is defined . . . as the allowing of the use on a condition for the return of the equivalent in kind, such as to lend money." *Kirkland v. Bailey*, 155 S.E.2d 701, 703 (Ga. Ct. App. 1967) (physical precedent only); *see Calcasieu-Marine Nat. Bank of Lake Charles v. Am. Emp. Ins. Co.*, 533 F.2d 290, 296 (5th Cir. 1976) (citation and punctuation omitted) ("The classic definition of a loan is . . . a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows."). While there is no Georgia law directly on point, case law in the Eleventh Circuit reasons that "'loan proceeds do not remain the property of the lender.'" *United States v. Ross*, 131 F.3d 970, 981 (11th Cir. 1997) (quoting *United States v. Kristofic*, 847 F.2d 1295, 1296 (7th Cir. 1988)) (distinguishing *Kristofic*, where conversion happened *after* funding of loan, because appellants' in *Ross* defrauded Government *before* obtaining loan). Likewise, our sister court in the Western District of Washington held that "under Washington law, upon signing a loan agreement and the disbursal of those funds, the borrower is deemed to 'own' the loan proceeds." *Montclair United Soccer Club v. Count Me In Corp.*, 2010 WL 2376229, at *5 (W.D. Wash. June 9, 2010). Further, in a case applying Alabama law, the Fifth Circuit held that "[w]hen there is no obligation to return the identical money, but only a relationship of debtor or creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor." *Lyxell v. Vautrin*, 604 F.2d 18, 21 (5th Cir. 1979).

Here, the wired funds Plaintiff sent to AT&L were loan disbursements. Once Plaintiff disbursed Phoenix's loan proceeds, Plaintiff no longer had title or a right of possession to those exact proceeds. That the funds were disbursed to AT&L instead of

Phoenix, the debtor, does not alter this conclusion. Thus, Plaintiff cannot meet the first element of its claim for conversion, and Plaintiff's claim for conversion fails.

### 4. Claim VI Against AT&L: Unjust Enrichment

Plaintiff asserts a claim for unjust enrichment against AT&L for funds Plaintiff wired AT&L. "The theory of unjust enrichment is basically an equitable doctrine that the benefitted party equitably ought to either return or compensate for the conferred benefits when there was no legal contract to pay." *Bedsole v. Action Outdoor Advert. JV, LLC*, 750 S.E.2d 445, 452 (Ga. Ct. App. 2013) (punctuation omitted). However, "[a] claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails." *Wachovia Ins. Servs., Inc. v. Fallon*, 682 S.E.2d 657, 665 (Ga Ct. App. 2009). Here, Plaintiff has alleged only an implied-in-fact contract with AT&L. Doc. 55 at 20-21. Thus, because Plaintiff asserted unjust enrichment against AT&L as a separate tort and not as an alternative theory of recovery for a failed contract, the claim against AT&L for unjust enrichment fails as a matter of law.

### 5. Plaintiff's Damages

#### a. Damages Against Phoenix and American for Breach of Contract

In Georgia, "the measure of damages for breach of contract is the amount which will compensate the injured party" and which will allow the party to be "placed in the position he would have been in had the contract been performed." *Goody Prod., Inc. v. Dev. Auth. of City of Manchester*, 740 S.E.2d 261, 270 (Ga. Ct. App. 2013) (citation and punctuation omitted). Phoenix and American (and Falcon as discussed below) are jointly and severally liable to Plaintiff for the remaining principal and any interest and fees on the remaining principal. Plaintiff has submitted evidence showing that it is entitled to $287,578.88 in remaining principle and interest under the Cairo and Jackson Agreements. Pre-judgment interest began accruing on the unpaid balance of the three agreements on September 14, 2016, at the default rate of 16.00% per annum.

"[D]ouble recovery for the same injury is inappropriate even if it is sought from different parties." *Adler v. Hertling*, 451 S.E.2d 91, 98 (Ga. Ct. App. 1994). As discussed below, Plaintiff is entitled to default judgment against Falcon for breach of the same contract

as Phoenix and the same guarantees as American. Plaintiff is also entitled to recover from AT&L the funds lent to Phoenix and wired to AT&L through a claim of money had and received. Thus, any contract damages against Phoenix, American, or Falcon must be offset by Plaintiff's recovery as to these claims. *See, e.g., Kent v. A.O. White*, 559 S.E.2d 731, 735 (Ga. Ct. App. 2002), *overruled on other grounds by Time Warner Entm't Co. v. Six Flags Over Georgia, LLC*, 563 S.E.2d 178 (Ga. Ct. App. 2002). As such, Plaintiff is entitled to recover from Phoenix, American and Falcon, jointly and severally, the accelerated balance of the three contracts between itself and Phoenix along with applicable late charges and interest offset from any amount recovered from AT&L as discussed below.

### b. Damages Against AT&L for Money Had and Received

Plaintiff cannot recover $216,000.00 both from AT&L under money had and received and from Phoenix, Falcon, or American for breach of contract. *See White v. Weinberg*, 759 S.E.2d 903, 908 n.3 (Ga. Ct. App. 2014) ("[Plaintiff] is not permitted a double recovery of the same damages for the same wrong."). Absent a showing that Plaintiff cannot recover the loan proceeds from Phoenix, Falcon, or American, which it has not made, Plaintiff must elect a remedy prior to the entry of judgment. *See Graybill v. Attaway Constr. & Assocs., LLC*, 2017 WL 2628442, at *5 (Ga. Ct. App. June 19, 2017) ("[A]n election of remedies should be made before the entry of judgment" unless there is no risk of double recovery.).

## B. Defendant AT&L's Motion for Summary Judgment

### 1. Claims IV and VII: Money Had and Received and Breach of Contract

As explained above, Plaintiff is entitled to recover for money had and received because there was an implied-in-fact contract between Plaintiff and AT&L by which Plaintiff would provide funds to facilitate the Jackson transaction and would receive, in turn, a secured interest in the equipment sold under AT&L's contracts with Phoenix. AT&L breached its contract with Plaintiff by cancelling the sale and negating Plaintiff's security interest. Accordingly, summary judgment in favor of AT&L is not appropriate on either of these claims.

## 2. Claim V: Conversion

As discussed above, Plaintiff is not entitled to recover under a theory of conversion against AT&L because it cannot show an essential element of its claim—that it had "title to the property or the right of possession." *Hotels.com, L.P.*, 775 S.E.2d at 279 (citation and punctuation omitted). Plaintiff had a contract to loan money to Phoenix for the purchase of equipment from AT&L. Once Plaintiff disbursed Phoenix's loan proceeds, Plaintiff no longer had title or right of possession to those exact proceeds. That the funds were disbursed to AT&L instead of to Phoenix, the debtor, does not alter this conclusion. Accordingly, Plaintiff's Conversion claim fails as a matter of law.

## 3. Claim VI: Unjust Enrichment

As discussed above, Plaintiff cannot recover under a theory of unjust enrichment because Plaintiff alleged only an implied-in-fact contract with AT&L. Doc. 55 at 20-21. Thus, because Plaintiff asserted unjust enrichment against AT&L as a separate tort and not as an alternative theory of recovery for a failed contract, that claim against AT&L fails as a matter of law. *See Wachovia Ins. Servs., Inc.*, 682 S.E.2d at 665.

## 4. Claim VIII: Fraud

AT&L and Adams move for summary judgment on Plaintiff's claim of fraud against them. In Georgia, "[t]he tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *ReMax N. Atlanta v. Clark*, 537 S.E.2d 138, 141 (Ga. Ct. App. 2000). "In fraudulent concealment actions the allegedly defrauded party must prove that the alleged defrauder had actual, not merely constructive, knowledge of the fact concealed." *Id.* at 142 (punctuation omitted). "[M]ere concealment of a material fact, unless done in such as matter to deceive or mislead," will not support an action for fraud. O.C.G.A. § 51-6-2. Further, "[e]xcept in plain and indisputable cases, scienter in actions based on fraud is an issue of fact for jury determination." *ReMax N. Atlanta*, 537 S.E.2d at 142. "For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort." *Pyle v. City of Cedartown*, 524 S.E.2d 7, 9 (Ga. Ct. App. 1999).

Here, Defendants admit that they did not inform Plaintiff that the Cairo and Jackson equipment orders were delayed or cancelled. The evidence establishes that Defendants requested the final 10% funding for the Cairo Project nearly two months after AT&L refunded a large portion of the wired funds for the Cairo Project back to Phoenix. The parties dispute whether or not Adams or AT&L knew that Plaintiff was unaware of the cancellations. There is also, however, evidence weighing against scienter in the form of a lack of industry standards governing the manner in which Plaintiff funded the loans to Phoenix and the necessity of site inspections, as well as Plaintiff's failure to perform basic due diligence. Thus, there is a genuine issue of material fact as to the scienter element of the fraud claim, and summary judgment is not appropriate.

### 5. Claim IX: Attorney's Fees

Defendants move for summary judgment on Plaintiff's bad faith claim for attorney's fees. "[T]he element of bad faith that will support a claim for litigation expenses under O.C.G.A. § 13-6-11 must relate to the acts in the transaction itself prior to the litigation, not to the conduct during or motive with which a party proceeds in the litigation." *Fresh Floors, Inc. v. Forrest Cambridge Apartments, L.L.C.*, 570 S.E.2d 590, 592 (Ga. Ct. App. 2002). "[S]tatutory recovery for stubborn litigiousness or causing unnecessary trouble and expense is authorized if there exists no bona fide controversy or dispute regarding liability for the underlying cause of action." *David G. Brown, P.E., Inc. v. Kent*, 561 S.E.2d 89, 90-91 (Ga. 2002). Here, as discussed above, there is a genuine dispute as to AT&L and Adams' liability for the claims asserted in the Complaint, and Plaintiff cannot recover for stubborn litigiousness. Therefore, the only basis for attorney's fees under O.C.G.A. § 13-6-11 must be a claim for bad faith. Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, there is evidence suggesting bad faith in the underlying transactions between Defendants and Plaintiff. Thus, summary judgment is not appropriate here.

## IV. DEFAULT JUDGMENT

Falcon is currently in default. Doc. 66 at 1; *see* Doc. 35. Thus, the Court construes Plaintiff's Motion for summary judgment against Falcon as a renewed motion for default judgment.

## PROCEDURAL BACKGROUND

On August 4, 2015, Falcon was served with a summons and a copy of Plaintiff's Complaint[9] by serving the Georgia Secretary of State pursuant to O.C.G.A. § 14-11-209(f). Docs. 21 at 2; 16 at 3. Falcon has failed to plead or otherwise defend the instant suit. *See* Docket. On September 22, 2015, Plaintiff filed an Application to the Clerk of This Court for Entry of Default against Defendants. Doc. 21. On September 23, 2015, the Clerk of Court entered default against Falcon. *See* Docket.

## LEGAL STANDARD

After a default has been entered, the Clerk may enter a default judgment on the plaintiff's request if the claim "is for a sum certain or a sum that can be made certain by computation," as long as the party is not a minor or incompetent and has not made an appearance. Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the Court for a default judgment. Fed. R. Civ. P. 55(b)(2).

The entry of default by the Clerk does not in itself warrant the entry of default judgment by the Court. *See Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). "Because of [the] strong policy of determining cases on their merits, [ ] default judgments are generally disfavored." *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1244-45 (11th Cir. 2015) (citation omitted). "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. There must be sufficient basis in the pleadings for the judgment to be entered." *Nishimatsu*, 515 F.2d at 1206; *see Surtain*, 789 F.3d at 1245. A plaintiff establishes a sufficient basis for the entry of a default judgment by pleading adequate facts to "survive a motion to dismiss for failure to state a claim" under Fed. R. Civ. P. 12(b)(6). *Nishimatsu*, 515 F.2d at 1206.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead enough facts to state a claim for relief that is plausible—not just conceivable—on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the

---

[9]    Defendant Falcon Entity, LLC is in default and was deemed so prior to the filing of the Amended Complaint. Docs. 27 & 35. Thus, Plaintiff's original Complaint, Doc. 1, is the operative Complaint as to Defendant Falcon Entity, LLC. The Amended Complaint's allegations against Falcon Entity, LLC are identical in all material aspects. *See* Docs. 1 & 55.

plaintiffs," it is not required "to accept the labels and legal conclusions in the complaint as true." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). At bottom, "the factual allegations in the complaint must possess enough heft to set forth a plausible entitlement to relief." *Edwards*, 602 F.3d at 1291 (punctuation omitted). In the 12(b)(6) context, "documents attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court." *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014).

In ruling on a motion for default judgment, "the Court must consider (1) jurisdiction, (2) liability, and (3) damages." *Johnson v. Rammage*, 2007 WL 2276847, at *1 (M.D. Ga. Aug. 7, 2007) (citing *Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353 (S.D. Ga. 2004)).

## DISCUSSION

### A. Jurisdiction

The Complaint establishes that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiff has alleged that the amount in controversy exceeds $75,000.00, and there is complete diversity of citizenship between Plaintiff and Defendants. Doc. 1 ¶¶ 1-7. Further, the Complaint establishes that the Court has personal jurisdiction over Falcon, as it alleges that Falcon is a Georgia limited liability company with its principal place of business in Dawson, Georgia. Doc. 1 ¶ 6.

### B. Liability

A guaranty is a contract "whereby a person obligates himself to pay the debt of another in consideration of a benefit . . . or in consideration of . . . benefit given to his principal, the principal in either instance remaining bound therefor. [G]uarantors[ ] are jointly and severally liable with their principal unless the contract provides otherwise." O.C.G.A. § 10-7-1. A creditor in possession of a guarantee establishes a *prima facie* case for repayment by producing a valid guarantee and showing that it was executed. *CSS Real Estate Dev. I, LLC*, 749 S.E.2d at 774.

Here, on the facts as alleged in the Complaint, Plaintiff's allegations show that valid contracts existed between Plaintiff and Phoenix and between Plaintiff and Falcon. Plaintiff

has shown that Phoenix breached three agreements guaranteed by Falcon. Thus, Plaintiff has stated a claim against Falcon for breach of contract in Claims I, II, and III.

Given that Plaintiff has alleged facts that state a claim against Falcon, Plaintiff has adequately set forth Falcon's liability. Thus, there is a "sufficient basis in the pleadings for the [default] judgment to be entered," against Falcon. *Nishimatsu*, 515 F.2d at 1206.

## C. Damages

Even where the entry of default judgment is appropriate, the Court must hold an evidentiary hearing to determine damages unless all essential evidence is already on the record. *See* Fed. R. Civ. P. 55(b)(2); *see also S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). Here, the Complaint alleges that, as of September 14, 2016, the accelerated balance due Plaintiff under the two Cairo Agreements and the Jackson Agreement total $287,578.88 in remaining principle and interest. Plaintiff seeks pre-judgment interest accruing on the unpaid balance of the three agreements from September 14, 2016, at the default rate of 16.00% per annum. However, as discussed above, any amount that Plaintiff can recover from Falcon will likely be offset by the amounts recovered from Phoenix, American, and AT&L. Because the record is lacking in essential evidence regarding damages against Falcon, the Court must hold an evidentiary hearing to determine damages unless, after briefing, the Court can determine damages against Falcon.

## V. PLAINTIFF'S MOTION TO DISMISS A PARTY

Before the Court is Plaintiff's Motion to dismiss Ataollah Masoodzadehgan as a party, Doc. 72. Plaintiff represents that service cannot be perfected on Ataollah Masoodzadehgan because he cannot be located. *Id.* Defendants have not responded to the Motion. For good cause shown, Plaintiff's Motion, Doc. 72, is **GRANTED**.

## VI. CONCLUSION

Accordingly, Plaintiff's Motion for partial summary judgment, Doc. 66, is **GRANTED in part and DENIED in part**:

- Plaintiff's Motion for summary judgment on its claims for breach of contract against Phoenix and American is **GRANTED as to liability only**.

- Plaintiff's Motion for summary judgment on its claim for money had and received against AT&L is **GRANTED as to liability only**.

- Plaintiff's Motion for summary judgment on its claim for conversion against AT&L is **DENIED**.

- Plaintiff's Motion for summary judgment on its claim for unjust enrichment against AT&L is **DENIED**.

- Plaintiff's renewed Motion for default judgment against Falcon is **GRANTED as to liability only**.

Defendants' Motion for summary judgment, Doc. 69, is **GRANTED in part and DENIED in part:**

- Defendants' Motion for summary judgment on Plaintiff's money had and received and breach of contract claims is **DENIED**.

- Defendants' Motion for summary judgment on Plaintiff's conversion claim is **GRANTED**.

- Defendants' Motion for summary judgment on Plaintiff's claim of unjust enrichment is **GRANTED**.

- Defendants' Motion for summary judgment on Plaintiff's claim of fraud is **DENIED**.

- Defendants' Motion for summary judgment on Plaintiff's claim for attorney's fees is **DENIED**.

Plaintiff's Motion to dismiss a party, Doc. 72, is **GRANTED**.

Plaintiff is **ORDERED** to provide supplemental briefing on the amount of damages consistent with this order within thirty (30) days of the issuance of this order. Defendants shall have fourteen (14) days thereafter to respond. Finally, unless, after briefing, the Court can determine damages against Falcon, the Court will hold a **HEARING on damages** as to Defendant Falcon on a date to be specified in a forthcoming order from the Court.

**SO ORDERED**, this 15th day of September, 2017.

            /s/ Leslie J. Abrams
          **LESLIE J. ABRAMS, JUDGE**
          **UNITED STATES DISTRICT COURT**